**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

TERRI JONES,

        Plaintiff,

v.                                                                                  Case No. 2:22-cv-92-JRK

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

        Defendant.
_____/

## OPINION AND ORDER[1]

### I.   Status

Terri Jones ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of fibromyalgia, Hashimoto's disease, osteoarthritis, chronic migraines, reflux, depression, anxiety, and exophthalmos. Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed March 17, 2022, at 98, 117, 138, 160, 431.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 14), filed March 18, 2022; Reference Order (Doc. No. 15), entered March 18, 2022.

On July 10, 2020, Plaintiff protectively filed applications for DIB and SSI. Tr. at 411-17 (DIB), 402-08 (SSI).[2] Plaintiff alleged a disability onset date of February 14, 2020 in both applications. Tr. at 411 (DIB), 402 (SSI). The applications were denied initially, Tr. at 97-115, 135, 189, 191, 192-99 (DIB); Tr. at 116-34, 136, 200, 202, 203-09 (SSI), and upon reconsideration, Tr. at 137-58, 181, 212, 215, 217-26, 228-37 (DIB); Tr. at 159-80, 182, 238, 241, 243-63 (SSI).[3]

On August 4, 2021, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE").[4] See Tr. at 36-64 (hearing transcript); Tr. at 382-93 (appointment of representative documents). At the time of the hearing, Plaintiff was forty-nine (49) years old. Tr. at 41. On August 31, 2021, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 15-28.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council and submitted a brief in support of the request. Tr. at 4-5 (Appeals

---

[2] The DIB and SSI applications were actually completed on July 24, 2020. Tr. at 411 (DIB), 402 (SSI). The protective filing date for both the DIB and SSI applications is listed elsewhere in the administrative transcript as July 10, 2020. Tr. at 98, 117, 138, 160.

[3] The administrative transcript also contains administrative denials of a DIB application filed in 2012. Tr. at 66-91. Because Plaintiff did not appear for her hearing on that claim, the assigned ALJ dismissed it. Tr. at 95-96. The 2012 claim is not at issue here.

[4] The hearing was held via videoconference with Plaintiff's consent because of extraordinary circumstances presented by the COVID-19 pandemic. Tr. at 38-39, 301-02.

Council exhibit list and order), 395-99 (request for review), 531-33 (brief). On December 16, 2021, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On February 10, 2022, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues: 1) "[t]he ALJ's determination that [Plaintiff's] migraines were not as severe as she alleged is not supported by substantial evidence"; 2) the "ALJ's finding that [Plaintiff] was taking Methadone for addiction rather than pain is not relevant to whether her allegations of pain were supported"; 3) the "ALJ's finding that [the opinion of treating neurologist Naili Duan, M.D., Ph.D.] was not persuasive is not supported by substantial evidence"; and 4) "[t]he ALJ's analysis of [Plaintiff's] pain and limitations from fibromyalgia did not comport with SSR 12-2p." Plaintiff's Memorandum (Doc. No. 17; "Pl.'s Mem."), filed May 16, 2022, at 13, 19, 21, 23 (emphasis omitted); see id. at 13-19, 19-20, 21-23, 23-25. On August 11, 2022, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem.") responding to Plaintiff's contentions. Then, as permitted, Plaintiff on August 25, 2022 filed Plaintiff's Reply to Defendant's Memorandum in Support of the Commissioner's Decision (Doc. No. 22; "Reply").

3

After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   **The ALJ's Decision**

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 17-28. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful

---

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

4

activity since February 14, 2020, the alleged onset date." Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: fibromyalgia; migraine headaches; osteoarthritis of the hips; cervicalgia; anxiety; and depression." Tr. at 18 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 18 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for four hours in an eight-hour workday; no operation of foot controls; occasional climbing of ramps or stairs, but may never climb [] ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, and crouching; no crawling; frequent forward, lateral, and overhead reaching; frequent handling and fingering; must avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity; work in environments of moderate noise as defined by SCO code noise level III or less; no exposure to extreme bright lights like stage lights, headlights, or bright inspection lights but normal home and office lighting is acceptable; no exposure to hazardous machinery or unprotected heights; able to understand, remember, and carry out simple and detailed tasks while maintaining attention and concentration for two hours at a time before requiring a regularly scheduled break; low stress work environment defined as only occasional decision-making and only occasional changes in the work setting; and frequent interaction with coworkers, supervisors, and the public.

Tr. at 20 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff "is unable to perform any past relevant work" as a "Hairstylist" and a "Management Trainee." Tr. at 26 (some emphasis and citation omitted). The ALJ then proceeded to the fifth and final step of the sequential inquiry. Tr. at 26-27. After considering Plaintiff's age ("48 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 26-27, such as "a toll collector," "a router," and "[a] storage rental clerk," Tr. at 27 (some emphasis omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from February 14, 2020, through the date of th[e D]ecision." Tr. at 28 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial

6

evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff raises four issues. Three of them relate to the ALJ's finding regarding Plaintiff's subjective complaints of pain and other symptoms not being consistent with the overall evidence of record: 1) the ALJ's findings about Plaintiff's migraine severity being less than Plaintiff alleged; 2) the ALJ's finding that Plaintiff was taking methadone primarily for addiction rather than pain; and 3) the ALJ's findings and analysis regarding Plaintiff's fibromyalgia and its symptoms. The issues are all addressed together, followed by Plaintiff's last issue: the ALJ's analysis of a letter written by treating neurologist Dr.

7

Duan (that Plaintiff characterizes as an opinion).

### A. Subjective Complaints and Related Issues

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"In evaluating the intensity and persistence of a claimant's symptoms, the ALJ considers the entire record, including the objective medical evidence, the claimant's history, and statements of the claimant and [his or] her doctors." Belser v. Soc. Sec. Admin., Comm'r, No. 20-12121, 2021 WL 6116639, at *6 (11th Cir. Dec. 27, 2021) (unpublished) (citing 20 C.F.R. §§ 404.1529(c)(1)-(2)). The Regulations in effect at the time of the ALJ's Decision provided that an ALJ "will" also consider other factors related to symptoms such as pain, including:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the

8

> claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).[6]

Particularly related to fibromyalgia, Social Security Ruling 12-2p "provides guidance on how the [Administration] develops evidence that a person has a medically determinable impairment of fibromyalgia and how it evaluates fibromyalgia in disability claims." Sorter v. Soc. Sec. Admin., Comm'r, 773 F. App'x 1070, 1073 (11th Cir. 2019) (citing SSR 12-2p, 2012 WL 3104869). "If

---

[6] In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017). "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

9

objective medical evidence does not substantiate the [claimant's] statements about the intensity, persistence, and functionally limiting effects of symptoms, [the Administration is to] consider all of the evidence in the case record, including the [claimant's] daily activities, medications or other treatments the [claimant] uses, or has used, to alleviate symptoms; the nature and frequency of the [claimant's] attempts to obtain medical treatment for symptoms; and statements by other people about the [claimant's] symptoms." SSR 12-2p at *5.

Here, the ALJ complied with the relevant Social Security Rulings and Regulations regarding Plaintiff's subjective complaints of pain before ultimately finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 21.

As to Plaintiff's migraines, the ALJ summarized the relevant evidence, including reports from Dr. Duan that Plaintiff's "headaches were mild and improved with Botox injections." Tr. at 23 (citing Ex. B11F/7, located at Tr. at 990). The ALJ recognized "there was a period of time that [Plaintiff] was not receiving Botox injections," but nevertheless made the finding that "the treatment notes still do not corroborate the alleged frequency of 20 migraines a

10

month." Tr. at 23. The ALJ further found that there was no documentation of "emergency department care for her migraines" and that Plaintiff's "neurologist has restarted her Botox injections." Tr. at 23 (citing Ex. B19F/4, located at Tr. at 1128).

Despite Plaintiff's assertions to the contrary, these findings are adequate and supported by substantial evidence. In arguing that the migraines are more severe than the ALJ found, Plaintiff recognizes, as she must, that by the time of the hearing, Plaintiff testified that the Botox was helping and that she was having one to two migraines per week (although Plaintiff testified each one could "last up to two, three days depending"). Tr. at 43. This testimony is generally consistent with the ALJ's finding regarding the frequency of the headaches and the relief provided by Botox.[7]

Plaintiff also points to later medical notes of Dr. Duan indicating the migraines were "more severe" and occurring "3-4 times per week." Reply at 1-2 (citing Tr. at 990). Although this notation does appear in the cited record, the very same record, in addition to later records, notes "[s]he had migraine 2-3 times a month" and "[h]er migraine improved with Botox." Tr. at 990; see also,

---

[7] Plaintiff contends the ALJ missed her testimony to this effect because the ALJ wrote that Plaintiff "alleged that she experiences up to 20 migraines a month" and that the ALJ did not specifically refer to her testimony regarding the lower number/help of Botox. Tr. at 23; see Pl.'s Mem. at 13. Even if the ALJ missed the testimony, it was harmless because of the relative consistency in the ultimate findings.

11

e.g., Tr. at 991, 1117. At worst, the cited record is inconsistent and unreliable. But, when read in context with the entirety of the record and the rest of Dr. Duan's records, it is more likely that the cited language is carried over from Plaintiff's reported history because it appears in multiple records in a similar position each time. See, e.g., Tr. at 984 ("[s]he used to have 3-4 migraines a month"), 987, 990, 993, 1117. This does not amount to a lack of substantial evidence to support the ALJ's findings regarding the frequency and severity of the migraines.

Plaintiff also alleges it was inappropriate for the ALJ to rely on the lack of emergency treatment evidence in making the findings about the migraine severity. Pl.'s Mem. at 16-19; Reply at 2-3. Even if that observation is ignored, though, the rest of the ALJ's findings about the severity of the migraines are adequate and supported. Thus, it need not be determined whether it was appropriate to make such an observation.

The next relevant finding by the ALJ was that, contrary to Plaintiff's allegation "that she was taking methadone for pain management, . . . it appears that the methadone is primarily treatment for [Plaintiff's] opiate addiction, rather than pain management." Tr. at 22 (citing, e.g., Ex. B12F, located at Tr. at 998-1066). Again, Plaintiff recognizes, as she must, that the methadone was at the very least "started . . . due to her opioid use disorder." Pl.'s Mem. at 19 (citing Tr. at 605). Plaintiff goes on to argue that methadone "has been and still

12

is used as a pain killer," even noting that a primary physician "stated that [Plaintiff] was on methadone to treat her fibromyalgia pain." Id. at 19-20 (citing Tr. at 1112). The cited record, however, merely notes "on methadone" after the fibromyalgia diagnosis—the very same one indicates in the narrative section that "fibromyalgia [is] stable, took lyrica swelling on the extremities, [c]ymbalta worked some, gabapentin did not work." Tr. at 1110, 1112. The ALJ also made findings about Plaintiff's abuse of pain medications and strong substance abuse history, Tr. at 22 (citing Ex. B12F/2-4, located at Tr. at 998-1000), both of which are supported by substantial evidence in the record. In sum, the ALJ's finding about the primary reason for the methadone is supported by substantial evidence in the record, is not undermined by the evidence Plaintiff cites, and is one permissible factor among many relied upon by the ALJ for finding that Plaintiff's pain is not as severe as alleged.

The ALJ also adequately addressed Plaintiff's fibromyalgia. The ALJ recognized Plaintiff had been diagnosed with it but found she "has failed to satisfy the criteria set forth in SSR 12-2p." Tr. at 18. The ALJ stated Plaintiff only was "noted to have 4/18 tender points." Tr. at 18 (citing Ex. B9F/4, located at Tr. at 968). The ALJ recognized Plaintiff had been treated by a rheumatologist. Tr. at 21 (citing Ex. B2F/8, located at Tr. at 588); see also Tr. at 23. The ALJ acknowledged Plaintiff's allegation that her "pain had increased over the years," but found "she responded well to Cymbalta." Tr. at 23. In the

13

end, the ALJ found that "[t]reatment notes show that her fibromyalgia is stable." Tr. at 23 (citing Ex. B19F/9, located at Tr. at 1133).

Plaintiff argues the ALJ failed to comply with SSR 12-2p, but the undersigned finds otherwise. The ALJ's Decision makes clear that the foregoing fibromyalgia findings, together with the ALJ's other findings about the evidence of record, adequately comply with the relevant ruling.

Plaintiff also contends the ALJ erred in rejecting the opinion of her primary doctor, Juleidis Quintana, M.D., partially regarding the effects of Plaintiff's fibromyalgia. Pl.'s Mem. at 25; see Tr. at 1121-24 (Dr. Quintana's opinion). Plaintiff hardly analyzes the ALJ's determination to reject Dr. Quintana's opinion, noting that it was "again due to generally normal treatment records." Pl.'s Mem. at 25 (citing Tr. at 25); see Reply at 4. But, the ALJ provided a number of reasons for rejecting Dr. Quintana's opinion, including its inconsistency with the record, its lack of support in the doctor's treatment records, its contrast with the opinion of consultative examiner Michael Rosenberg, M.D., and its contrast with Dr. Duan's notes. Tr. at 25. Especially considering these unchallenged findings and the ALJ's other findings regarding the record evidence, the ALJ's rejection of Dr. Quintana's opinion as it relates to Plaintiff's fibromyalgia was appropriate and adequately supported.

In sum, the ALJ's findings regarding Plaintiff's subjective complaints, including the tangential issues Plaintiff raises, are supported by substantial

evidence.

### B. Dr. Duan's Letter

Dr. Duan, who treated Plaintiff for the migraines, wrote a two-line letter on April 2, 2021 that states the following:

> To Whom It May Concern:
>
> Terri Jones has chronic migraine more than 20 days a month. She is unable to work due to her condition.
>
> Sincerely,
>
> Naili Duan, MD, PhD

Tr. at 1086. The ALJ found the letter "contains a conclusory statement that is on an issue reserved to the Commissioner and it is inherently neither valuable nor persuasive." Tr. at 25. The ALJ also found that if the letter were accurate on the frequency of the migraines, Plaintiff "would be unable to perform the daily activities that she has reported," including "performing simple household chores," "operat[ing] a motor vehicle," "shop[ping] for personal items," and "manag[ing] her finances independently." Tr. at 25-26 (citing Exs. B14E, B9F, located at Tr. at 479-86, 966-72).

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and

15

Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). [8] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing

---

[8] Plaintiff filed her applications after the effective date of section 404.1520c, so the revised rules and Regulations are applicable.

16

a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).[9]

In challenging the ALJ's rejection of Dr. Duan's letter, Plaintiff relies in part on her earlier assertions about the severity of her migraines. Pl.'s Mem. at 21. For the reasons already stated, the undersigned does not find merit in those assertions. Plaintiff also contends the ALJ should not have relied on the ability to perform everyday activities of short duration, Pl.'s Mem. at 22; Reply at 5-6, but in conjunction with the other findings made by the ALJ, these observations

---

[9] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

17

were appropriate.

Moreover, despite Plaintiff's challenge, the ALJ correctly noted that Dr. Duan's conclusory letter, to the extent it opined on Plaintiff's overall ability to work, was on an ultimate issue reserved to the Commissioner and is neither valuable nor persuasive. Tr. at 25; see 20 C.F.R. §§ 404.1520b(c)(3)(i), 416920b(c)(3)(i) (discussing "[e]vidence that is inherently neither valuable nor persuasive," including "[s]tatements on issues reserved to the Commissioner"). Together with the ALJ's other reasons for rejecting the letter, the ALJ was permitted to rely on this reason.

In sum, the ALJ did not err in addressing Dr. Duan's conclusory letter and rejecting it.

## V.   Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. In light of the foregoing, it is

**ORDERED**:

1.  The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as well as § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

    2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 15, 2023.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record

19